UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


DEBRA J. PRICE                                                                           PLAINTIFF


             VS.                            Civil No. 3:14-cv-3028-MEF


CAROLYN W. COLVIN,                                                                DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Debra J. Price, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act F(hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.        Procedural Background:

Plaintiff filed her application for DIB on March 17, 2010, alleging an onset date of October 15, 2003, due to seizures, right knee injury, torn and severed anterior cruciate ligament ("ACL"), numbness in right shoulder, arm, hand and wrist, nerves and anxiety, mental breakdown, and back problems. (T. 318) Plaintiff stopped working because the company closed. She had a breakdown and did not return to work. (T. 319) Plaintiff's application was denied initially and on reconsideration. (T. 145-147, 152-154). Plaintiff then requested an administration hearing, which

1

was held in front of Administrative Law Judge ("ALJ"), Hon. Edward M. Starr, on May 18, 2011. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 56 years of age and had graduated from high school. (T. 319) Her past relevant work experience included working as a sales person for mobile homes from 1993 until October 15, 2003. (T. 320) At the hearing, Plaintiff's counsel requested and the ALJ approved to amend the date of onset to July 10, 2008. (T. 69)

On June 10, 2011, the ALJ found Plaintiff's fracture of the right tibia severe. (T. 122) The ALJ concluded Plaintiff was not disabled from July 10, 2008, through her date last insured, December 31, 2008. (T. 126)

Plaintiff appealed this decision to the Appeals Council, and said request for review was granted on October 20, 2011, as the Appeals Council determined the ALJ's decision was not supported by substantial evidence.  The Appeals Council determined the decision needed to be remanded to obtain vocational evidence sufficient to allow a comparison of Plaintiff's residual functional capacity ("RFC") with the physical and mental demands of her past relevant work as a mobile home salesperson, in accordance with DOT 279.357-054, general merchandise salesperson, since Plaintiff testified she did not prepare the paperwork. (T. 134) The Appeals Council also found the ALJ erred when he failed to consider the testimony of Helen Garrison, a non-medical third party. (T. 134-135)

On December 18, 2012, a second hearing was held to further develop the vocational evidence sufficient to allow a comparison of the Plaintiff's RFC with the physical demands of her past relevant work. (T. 63) On February 14, 2013, the ALJ issued a second Decision and found Plaintiff's fractured lower limb severe, however found Plaintiff's seizures, right knee torn ACL, nerves, anxiety, back problems, and numbness in the right shoulder, arm, hand, and wrist not

severe, as these impairments did not cause more than a minimal effect on her ability to perform basic work activities. (T. 16) Considering the Plaintiff's age, education, work experience, and the RFC based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from July 10, 2008, through her date last insured, December 31, 2008. The ALJ determined Plaintiff had the RFC to perform light work, except she could occasionally climb, balance, crawl, kneel, stoop, and crouch. (T. 17)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 22, 2014. (T. 1-6) Plaintiff then filed this action on March 21, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 6) Both parties have filed briefs, and the case is ready for decision. (Doc. 10 and 11)

## II.   <u>Applicable Law:</u>

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520(a)(4)(v).

### III.   Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset July 10, 2008 through her last date insured, December 31, 2008. Plaintiff raises four issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B)

the ALJ erred in his determination of the severity of Plaintiff's impairments; (C) the ALJ erred in his *Polaski* analysis; and, (D) The ALJ erred in his RFC determination. (Doc. 10, pp. 10-20)

In order to qualify for DIB, a claimant must show that he or she became disabled during the period in which he or she met the DIB requirements. *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001).  A claimant who becomes disabled after the expiration of her insured status is not entitled to DIB. *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Thus, the period of review is from July 10, 2008, the alleged onset date, through December 31, 2008, Plaintiff's last insured date**.**

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A.  Fully and fairly develop the record:

Plaintiff asserts the ALJ failed to fully and fairly develop the record when the ALJ failed to order an additional consultative examination regarding Plaintiff's anxiety disorder and failed to interpret the meaning of "prolonged." (Doc. 10, pp. 10-11) The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994)*.* After reviewing the record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision, thus remand is not necessary.

5

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id*. (internal quotations and citation omitted). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id*. (internal quotations and citation omitted).

> While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo* [*v. Barnhart*], 377 F.3d [801,] 806 [(8th Cir. 2004)]. The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§404.1512(e), 416.912(e).

*Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

Plaintiff argues the ALJ erred when he failed to order a mental examination regarding Plaintiff's alleged anxiety disorder.  The Plaintiff testified she did not have a history of mental health treatment and the record did not contain any mental health records.  After reviewing the record the Court found no medical evidence, diagnostic testing, or treatment to warrant a psychological consultative examination.  While the ALJ does have a duty to fully and fairly develop the record, the Plaintiff has the burden of persuasion to prove disability and demonstrate her RFC, even when the burden shifts to the ALJ at step five. *Stormo v. Barnhart*, 377 F.3d at 806.

The Plaintiff also argues the ALJ misunderstood the interpretation of "prolonged standing and walking." (Doc. 10, p. 11) The Plaintiff's argument is without merit.  Plaintiff argues the ALJ did

not understand the meaning of the word "prolonged," however, the Plaintiff also argues the decision should be reversed and Plaintiff should be awarded benefits. (Doc. 10, p. 18)

The undersigned has reviewed the record and finds the record contained sufficient evidence for the ALJ to make an informed decision as the evidence included medical records, opinion evidence, treatment records, testimony, the Plaintiff's reports she submitted to the Commissioner, and diagnostic testing.  The Plaintiff has not demonstrated unfairness or prejudice resulting from the ALJ's failure to order additional consultative examinations to further develop the record or his alleged misunderstanding of the word "prolonged."  Such a showing is required in order for a case to be reversed and remanded. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (absent unfairness or prejudice, we will not reverse or remand).

**B.  Severity of Impairments:**

Plaintiff argues the ALJ erred in his severity analysis in not finding Plaintiff's non-fracture injuries severe. (Doc. 10, p. 11) The Commissioner uses a five-step evaluation to determine if a claimant is disabled. *Simmons v. Massanari*, 264 F.3d at 754; See 20 C.F.R. § 416.920(a)(4).  Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe." *Simmons,* 264 F.3d at 754; 20 C.F.R. § 416.920(a)(4).  An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.  *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a).  If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).  It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000).  Severity is not an

onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and the Eighth Circuit has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing.  See, e.g., *Page v. Astrue*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir.1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)); see also 20 C.F.R. § 1521 (an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

Plaintiff argues the ALJ erred when he failed to apply the special technique in evaluating Plaintiff's mental impairment. (Doc. 10, p. 11) The Court has reviewed the record and finds the record devoid of medical records regarding Plaintiff's alleged anxiety.  Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt v. Apfel*, 204 F.3d at 852 (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is

supported by the record. *See Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). Thus, the ALJ appropriately determined Plaintiff's anxiety and nerves would pose no more than a minimal effect on the Plaintiff's ability to perform basic work activities.

Next, Plaintiff argues the ALJ erred when he failed to combine Plaintiff's knee and ankle impairments, Plaintiff's right tibia plateau fracture and bone fragments with her separate complete ACL tear and separate lateral meniscus tear, and her osteoarthritis with her fracture. (Doc. 10, p. 13) Regarding Plaintiff's right knee fracture, Dr. Tarik Sidani, orthopedic surgeon, observed Plaintiff's right knee fracture was well healed and she had good maintenance of her joint line on August 25, 2008.  (T. 446) While the ALJ did not find Plaintiff's ACL tear severe, throughout the ALJ's Decision he incorporated her ACL tear diagnosis and the restrictions the Bureau of Prisons placed on Plaintiff throughout her sentence: cell on the first floor, a bottom bunk, convalescence, arch supports, no prolonged standing, squatting, ladders, upper bunk, or lifting more than 15 pounds. (T. 18) *See Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992), quoting *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir. 1987) ("[a]n 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome").

Regarding Plaintiff's osteoarthritis and ankle impairments, Plaintiff did not allege these impairments in her application.  While the 2009 records from the Bureau of Prisons noted Plaintiff was to receive an X-ray of her ankle, there were no x-rays provided.  Moreover, even if the records were provided the date was after Plaintiff's last date insured, December 31, 2008.  Regarding her osteoarthritis, the first mention was by Dr. Shannon Brownfield, state agency medical consultant, on September 2, 2011.  While Dr. Brownfield did observe the x-rays showed mild osteoarthritis

of the knee and mild to moderate arthritis of the right ankle, he did not diagnose her with osteoarthritis, rather he diagnosed her with right knee pain status post injury with ligamentous tears and right ankle pain. (T. 602) A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990).  Furthermore, Dr. Brownfield did not state his opinion related back to Plaintiff's date last insured.

Plaintiff had the burden of showing a severe impairment significantly limited her physical or mental ability to perform basic work activities.  *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001).  The undersigned finds substantial evidence supported the ALJ's determination of Plaintiff's severe impairment of fractured lower limb, but not the other alleged impairments.

## C. *Polaski* analysis:

Plaintiff contends the ALJ improperly evaluated the Plaintiff's subjective complaints of pain. (Doc. 10, p. 9) Among the ALJ's findings in his Decision was a finding that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible for the reasons explained in this decision." (T. 18) While the ALJ employed a bit of Social Security boilerplate, the ALJ did appropriately address Plaintiff's credibility by examining and addressing the relevant medical evidence, application documents, and testimony at the hearing in accordance with applicable regulations, rulings and Eighth Circuit case law. (T. 15)

It is the ALJ's duty to determine the Plaintiff's RFC.  Before doing so, the ALJ must determine the applicant's credibility, and how the Plaintiff's subjective complaints play a role in assessing her RFC. *Pearsall v. Massanari,* 274 F.3d at 1217-18. The ALJ must give full "consideration to

10

all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and, (5) functional restrictions. The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Polaski v. Heckler*, 739 F.2d 1230, 1322 (8th Cir. 1984).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain." *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994). To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs*., 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of

the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d at 883).

While the Plaintiff correctly asserts an ALJ may not disregard subjective allegations of pain merely because they were not fully supported by objective medical evidence, *Polaski v. Heckler*, 739 F.2d at 751, an ALJ is entitled to make a factual determination that Plaintiff's subjective complaints of pain were not credible in light of objective medical evidence to the contrary. *See* 20 C.F.R. §§ 404.1528, 404.1529 (a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the Plaintiff's statements.) In the present case, the ALJ gave multiple valid reasons for finding Plaintiff's subjective complaints not entirely credible, and the Court defers to those credibility findings. See *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence).

In making the credibility determination, the ALJ expressly listed the *Polaski* factors in his Decision. (T. 21) The ALJ considered Plaintiff's activities of daily living, where she was able to go outside, watch animals and television, listen to music, attend church, fold laundry that was brought to her, handle finances, talk on the phone, and visit with the couple she lived with and family. (T. 18, 407-408) The ALJ did not discount all of the Plaintiff's complaints and recognized she had limitations, but determined the limitations did not preclude the performance of any work activity. (T. 18)

The ALJ discounted Plaintiff's subjective complaint of pain regarding her knee when she failed to follow Dr. Sidani's recommendation of obtaining physical therapy. (T. 446) Plaintiff testified she did not obtain physical therapy because she did not have insurance and there were no free clinics; however, Plaintiff was given at home exercises to perform, and she did not perform the

exercises either. (T. 81, 446) See *Dunahoo v. Apfel*, 241 F.3d at 1038 (Plaintiff's failure to follow prescribed course of treatment weighted against credibility when assessing subjective complaints of pain.)

The ALJ weighed the opinion evidence of Dr. Sidani, where he opined Plaintiff's injury would preclude her from working and surgery was recommended, but Plaintiff never received the surgery. The determination of whether Plaintiff was disabled, however, was an issue reserved for the Commissioner. (T. 445) *See Ellis v. Barnhart*, 392 F. 3d 988, 994 (8th Cir. 2005) (A medical source opinion that an applicant is "disabled" or "unable to work," however involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the commissioner gives controlling weight.)

Plaintiff argues the ALJ's subjective complaints of reasoning is circular, because he rejected Dr. Brownfield's statement that Plaintiff was limited to no prolonged standing or walking. (Doc. 10, p. 14) The Plaintiff's argument is without merit. The ALJ determined Dr. Brownfield's opinion was slightly more limiting than the objective medical evidence of record supported. In Dr. Brownfield's examination, he attempted to conduct a physical examination of Plaintiff's knee, however she stated it was "so painful" to move, and she would only allow Dr. Brownfield to move it to 45 degrees, yet while she was seated her knee was at 90 degrees. (T. 603) Whether Plaintiff was capable of prolonged sitting or standing on September 2, 2011, was immaterial because the time frame the ALJ considered was July 10, 2008 through the date last insured, December 31, 2008, and Dr. Brownfield's assessment did not indicate Plaintiff's limitations related back to that period.

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, we conclude that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th

Cir. 2006); *Dunahoo v. Apfel*, 241 F.3d at 1037 (holding that ALJ's decision to discredit plaintiff's testimony will be upheld if he gives a good reason for doing so, even if every factor is not discussed in depth).

### D.  RFC determination:

Plaintiff argues the ALJ erred in his RFC determination concluding Plaintiff could perform a full range of light work with no mental or postural limitations. (Doc. 10, p. 11) RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony at the hearing, disability and function reports, the X-rays and magnetic resonance imaging ("MRI") performed in 2008, Dr. Sidani's treatment records, the Bureau of Prisons medical records, the testimony of Plaintiff's friend, Helen Garrison, and the state agency medical consultative examinations. (T. 17-21)

Plaintiff argues the ALJ failed to explain why he rejected Dr. Sidani and the Bureau of Prisons' medical records. (Doc. 10, p. 18) Plaintiff's argument is without merit. The ALJ considered Dr. Sidani's medical treatment in 2008. In determining Plaintiff's RFC, the ALJ considered Plaintiff's initial injury she sustained in a four-wheeler accident in July 2008 where she was diagnosed with a right tibial plateau fracture. (T. 18) Upon examination, Dr. Sidani observed her right knee was 3+ effusion, and 2+ Lachman's. The X-rays showed a non-displaced tibial plateau fracture and a computerized tomography ("CT") scan showed a fracture through the posterior lateral aspect of the tibial plateau, which did not follow a specific tibial plateau fracture. (T. 490) In Dr. Sidani's opinion, Plaintiff had more of an ACL injury than a plateau fracture. He recommended obtaining an MRI, physical therapy, and planned to perform a delayed reconstruction once she regained full range of motion. (T. 448) The radiology report showed multiple abnormalities of the right knee including: soft tissue contusion, bone contusion, tibial plateau fracture, small joint effusion, and abnormal ligaments. (T. 449) Plaintiff was discharged in a wheelchair, however the goal was to have her ambulate with crutches. (T. 493)

 Plaintiff sought treatment from Dr. Sidani on July 24, 2008. Plaintiff had been in a knee immobilizer and indicated her pain was much better. (T. 446) Upon physical examination, Dr. Sidani observed Plaintiff had 3+ Lachman's, 1+ effusion, and 20 degrees flexion. Her ligaments were stable and neurovascularly intact. (T. 446) After his examination, Dr. Sidani indicated Plaintiff was much too stiff to proceed with surgery, he wanted her to regain full range of

15

movement and follow-up in four weeks. Dr. Sidani wanted her to attend physical therapy, get a hinged knee brace, and they discussed surgery at the follow-up appointment. (T. 446)

On August 25, 2008, Plaintiff's follow up with Dr. Sidani showed Plaintiff performed a home exercise program and wore a hinged knee brace, with little success.  Plaintiff complained of instability in her knee, hyperextension, and pain in the lateral aspect of her knee.  Upon examination Plaintiff had 5-40 degrees of flexion, no effusion, Lachman's was 2+, and she was neurovascularly intact. (T. 446) The X-rays showed Plaintiff's lateral right knee fracture was well healed and she had good maintenance of her joint line. (T. 446) Dr. Sidani opined Plaintiff needed the surgery due to her instability in her knee.  He encouraged Plaintiff to work on her flexion exercises. (T. 446)

Dr. Sidani indicated Plaintiff needed to obtain a full range of motion in order for him to perform the procedure and prescribed physical therapy. (T. 18-19)  Plaintiff stated she did not attend physical therapy because she could not afford it, however, she was given exercises to perform at home and failed to do those either. (T. 81) While Dr. Sidani did write a letter in 2009 stating Plaintiff would not be capable of working due to her injury and surgery was recommended, Plaintiff continued to perform activities of daily living in and out of prison and she never obtained the surgery. (T. 445)

Plaintiff testified she was convicted of a white collar crime and sentenced to the Bureau of Prisons in 2009. (T. 60) While Plaintiff argues the ALJ failed to give reasons for rejecting the treating source evidence from the prison doctors, the undersigned finds the ALJ appropriately considered those records. In making his RFC determination, the ALJ considered the following limitations placed on the Plaintiff while she was in the Bureau of Prisons: cell on the first floor, bottom bunk, convalescence, arch supports, and work restrictions to include no prolonged

standing, squatting, ladders, upper bunk, or lifting more than 15 pounds. (T. 18) Plaintiff claimed that she continued to utilize a wheelchair while in prison (Doc. 10, p. 17), but there was no evidence in the record to support that claim. The ALJ considered the medical records from the Bureau of Prisons in 2009, even though they were outside of the time frame for Plaintiff's DIB claim.

The ALJ also considered the testimony of Plaintiff's friend, Helen Garrison, in making his RFC determination.  The ALJ determined that while Ms. Garrison was not medically trained to make "exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her testimony [was] questionable." (T. 19-20) The ALJ further determined by the nature of their relationship, living together, Ms. Garrison was not a disinterested witness; thus, the ALJ did not give significant weight to her testimony as it was not consistent with the opinions and observations by medical doctors. (T. 20) *See Buckner v. Apfel*, 213 F.3d 1006, 1013 (8th Cir. 2000) (an ALJ is not required to accept a statement from a witness who will benefit financially from a determination of disability).

The ALJ also considered the state agency opinions of Dr. Steven Strode and Dr. Jonathan Norcross.  Dr. Strode reviewed the medical evidence on June 10, 2010, and opined Plaintiff could occasionally lift fifty pounds, frequently lift twenty five pounds, sit, stand, and walk six hours in an 8-hour day, she was unlimited in pushing and pulling, and did not have any postural limitations. Dr. Strode noted since there was no evidence of ongoing longitudinal care for the right tibial fracture after August 25, 2008, and due to the medically determinable impairment of the right tibia, the medical evidence of record before the date last insured, December 31, 2008, Plaintiff could perform medium work. (T. 503)

17

Dr. Norcross reviewed the medical evidence on September 6, 2011, and determined Plaintiff was able to occasionally lift twenty pounds, frequently lift ten pounds, sit, stand, and walk six hours in an eight hour work day, and she was unlimited in pushing and pulling. (T. 604-605) Dr. Norcross did not recommend any postural limitations. (T. 606) Dr. Norcross opined the medical evidence of record supported a light RFC and recommended giving the date of filing as the date of onset.  He further noted there was insufficient evidence to adequately rate the claim as of the date last insured. (T. 611)

The ALJ made a scrivener's error in his Decision when he noted Dr. Norcross "found after reviewing the record that the claimant was able to perform medium work." (T. 20) Dr. Norcross actually indicated in his assessment that Plaintiff could perform light work. (T. 20, 611) The undersigned finds the error was harmless.  In determining the Plaintiff's RFC, the ALJ found that Dr. Strode's opinion that Plaintiff could perform medium work was not fully supported by the objective medical evidence that showed Plaintiff was more limited physically. (T. 20) Even though Dr. Norcross was a consultative medical examiner, the ALJ gave his opinion great weight since he was well versed in the assessment of functionality as it pertained to the disability provisions of the Act and his findings were fully supported by the objective medical evidence. (T. 20)

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the objective medical evidence, medical evidence, the state-agency evidence, and the testimony of the Plaintiff, the undersigned finds the RFC determined by the ALJ is supported by substantial evidence.

18

## IV.   <u>Conclusion:</u>

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 25th day of June, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE